1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    EASTERN DISTRICT OF CALIFORNIA
10
11  THOMAS JACQUES,
                                      2:05-cv-1994-MCE-DAD
12          Plaintiff,
13      v.                            <u>MEMORANDUM AND ORDER</u>
14  ALLSTATE INSURANCE COMPANY,
    et al.,
15
            Defendants.
16
                          ----oo0oo----
17
18      Through the present action, Plaintiff Thomas Jacques alleges

19  Defendant Allstate Insurance Company ("Allstate") discriminated

20  against him, harassed him and retaliated against him in violation

21  of California's Fair Employment and Housing Act ("FEHA"), Cal.

22  Gov't Code sections 12920 and 12940, et seq.  In addition,

23  Plaintiff alleges he was denied medical leave to which he was

24  entitled under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A.

25  § 2612, as well as under the California Family Rights Act

26  ("CFRA"), Cal. Gov't Code section 12945.2.  Further, Plaintiff

27  alleges Allstate failed to reasonably accommodate his disability

28  in violation of FEHA, Cal. Gov't Code section 12940 et seq.

                                  1

1  Plaintiff also alleges he was wrongfully terminated in violation

2  of public policy.  Lastly, Plaintiff alleges Allstate is

3  responsible for negligent infliction of emotional distress.

4       Plaintiff has conceded his second cause of action for

5  wrongful denial of medical leave under the FMLA, as well as under

6  the CFRA.  Plaintiff has also conceded his fourth cause of action

7  for wrongful termination.  Accordingly, Allstate's Summary

8  Judgment Motion as it relates to those two causes of action is

9  GRANTED.  For the reasons set forth below, Allstate's Summary

10 Judgment Motion as it relates to Plaintiff's claim for

11 discrimination is GRANTED.  Allstate's Summary Judgment Motion as

12 it relates to Plaintiff's claim for retaliation is GRANTED in

13 part and DENIED in part.  Allstate's Summary Judgment Motion as

14 it relates to Plaintiff's claim for harassment is GRANTED.

15 Allstate's Summary Judgment Motion as it relates to Plaintiff's

16 claim for failure to accommodate is DENIED.

17

18                          **BACKGROUND**[1]

19

20      Plaintiff Thomas Jacques has been employed as an insurance

21 adjuster with Allstate Insurance Company since August 6, 1986.

22 His obligations as a claims adjuster include investigating

23 claims, determining claims values, interpreting applicable

24 policies regarding policy coverage and limits, and negotiating

25 the resolution of covered claims.

26

27      [1]The Court notes Allstate has lodged a number of objections
   to Plaintiff's submissions.  To the extent facts are stated
   herein, they are deemed undisputed and Allstate's objections are
28 overruled.

                                 2

1   During the relevant period, Plaintiff was under the supervision
2   of Linda Johnson-Jones.  The Human Resources manager at the time
3   for Allstate was Lori Lauritzen.

4        On March 12, 2004, Plaintiff underwent quadruple bypass
5   surgery.  On June 4, 2004, Plaintiff's primary care physician,
6   Dr. Julie Baur, released him to return to work without
7   restrictions.  On June 14, 2004, Plaintiff returned to work in
8   his capacity as a claims adjuster.

9        During Plaintiff's first return to Allstate in June of 2004,
10  he experienced cognitive challenges eventually linked to his
11  heart surgery.  Specifically, Plaintiff was diagnosed with post-
12  pump encephalopathy which generally results in mild to moderate
13  cognitive deficits.  Prior to Plaintiff's heart surgery, he
14  processed 12-15 insurance claims per day at an average value of
15  $8,000.00 to $10,000.00.  Subsequently, Plaintiff was only able
16  to process 2-3 claims per day.  Plaintiff sought assistance from
17  Johnson-Jones in processing a claim and was instructed to consult
18  his co-worker Jerry Roland for help.  Roland provided Plaintiff
19  the support he sought with that claim.  Otherwise, Allstate did
20  not specifically assist Plaintiff in handling his claims.
21  Johnson-Jones also discussed online training courses aimed at
22  assisting Plaintiff with processing his claims.  On another
23  occasion, Plaintiff advanced an email to Johnson-Jones requesting
24  guidance on handling two particular files.  Johnson-Jones replied
25  by email clarifying the correct course for Plaintiff.  Plaintiff
26  complained to Loritzen alleging that the email was critical in
27  tone and lacking in direction.
28  ///

3

1  Allstate concedes such an exchange, but alleges the email was
2  non-discriminatory and simply addressed Plaintiff's question.

3      Plaintiff continued to work from June 14, 2004, until seven
4  months later, January 21, 2005, when he was again medically
5  excused from work.  This second leave of absence was initially
6  due to stress and high blood pressure.  Shortly after his leave
7  commenced, Dr. Baur referred Plaintiff to neurologist, Dr.
8  Gregory Fields, for further evaluation.  Plaintiff complained to
9  Dr. Fields of memory loss and other cognitive difficulties.
10 Plaintiff was diagnosed by Dr. Fields with "Cognitive Disorder,
11 Not Otherwise Specified."

12     Given that Plaintiff had exhausted his FMLA leave during his
13 first medical absence, he applied for and received short term
14 disability payments from Allstate's disability insurer, Liberty
15 Life.  In addition, Plaintiff received California State
16 Disability benefits.  Those benefits were exhausted on June 10,
17 2005.  It was at that point that Plaintiff alleges he began
18 requesting that Allstate reinstate him.  Plaintiff alleges Dr.
19 Baur released him to return to work on March 1, 2005.  Allstate
20 denies Dr. Baur ever issued such a release and contends instead
21 that Plaintiff was not cleared to return to work by any physician
22 or by Liberty Life until October 4, 2006, at which time Plaintiff
23 was permitted to return to work.

24     Upon the expiration of Plaintiff's short term disability
25 benefits, Plaintiff applied for long term disability benefits
26 from Liberty Life.  In addition, Plaintiff applied for long term
27 disability benefits from the Social Security Administration.
28 ///

4

1 Both applications were approved based on Plaintiff's documented
2 medical disability.

3     Both before and after Plaintiff's surgery, he received
4 "requires improvement" ratings in his checkpoint performance
5 evaluations regarding compliance with policies and accuracy of
6 work product.  However, Plaintiff also received a "meets"
7 requirements rating on his yearly review.

8

9                            **STANDARD**

10

11     The Federal Rules of Civil Procedure provide for summary
12 judgment when "the pleadings, depositions, answers to
13 interrogatories, and admissions on file, together with
14 affidavits, if any, show that there is no genuine issue as to any
15 material fact and that the moving party is entitled to a judgment
16 as a matter of law."  Fed. R. Civ. P. 56(c).  One of the
17 principal purposes of Rule 56 is to dispose of factually
18 unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477
19 U.S. 317, 325 (1986).

20     Rule 56 also allows a court to grant summary adjudication on
21 part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party
22 seeking to recover upon a claim ... may ... move ... for a
23 summary judgment in the party's favor upon all or any part
24 thereof."); *see also Allstate Ins. Co. v. Madan*, 889 F. Supp.
25 374, 378-79 (C.D. Cal. 1995); *France Stone Co., Inc. v. Charter*
26 *Twp. of Monroe*, 790 F. Supp. 707, 710 (E.D. Mich. 1992).
27 ///
28 ///

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. *See* Fed. R. Civ. P. 56(a), 56(c); *Mora v. ChemTronics*, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251-52 (1986); *Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers*, 971 F.2d 347, 355 (9th Cir. 1987).

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

///
///
///
///
///
///

**ANALYSIS**

**1.   Discrimination, Harassment and Retaliation**

Allstate correctly notes that, while Plaintiff frames his first cause of action as encompassing discrimination, harassment and retaliation, each claim arises independently under the statute.  *See* Cal. Gov't Code §§ 12940(a) (prohibiting discrimination), 12940(j) (prohibiting harassment), and 12940(h) (prohibiting retaliation); s*ee also Bagatti v. Dept. of Rehab.*, 97 Cal. App. 4th 344, 357 (2002).  Accordingly, the Court will treat each claim severally.

**a.   Discrimination**

California's FEHA prohibits discrimination based on a person's physical disability.  Cal. Gov't Code § 12940(a). Specifically, FEHA explains that it shall be an unlawful employment practice for an employer, because of physical or mental disability, to discriminate against a person in compensation or in terms, conditions, or privileges of employment.  *See id.*  A prima facie case for discrimination under FEHA requires a showing that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability.  *Jensen v. Wells Fargo Bank,* 85 Cal. App. 4th 245, 254, 102 Cal. Rptr. 2d 55 (2000) (citing *Brundage v. Hahn,* 57 Cal. App. 4th 228, 66 Cal. Rptr. 2d 830 (1997)).

8

1    In seeking summary judgment, Allstate argues that
2 Plaintiff's claim for discrimination must fail as he cannot
3 establish any adverse employment action nor is he a qualified
4 individual with a disability.  More precisely, Plaintiff alleges
5 the following as instances of adverse employment action: 1) his
6 August 2004, performance review indicated a "needs improvement"
7 rating; 2) his settlement authority was not increased upon his
8 return from medical leave; and 3) his supervisor was overly
9 critical of his work files.  Allstate contends none of the
10 foregoing can be deemed adverse employment action as a matter of
11 law.  Allstate further avers that Plaintiff cannot prevail on his
12 claim that its failure to reinstate him in March 2005, was
13 unlawful discrimination because Plaintiff is not a qualified
14 individual with a disability.  The Court will consider each of
15 these issues in turn.

16

17          **i.   Adverse Employment Action**

18

19    As noted supra, Plaintiff claims he was subjected to
20 discrimination when he received a "needs improvement" rating on
21 his performance evaluation; when his settlement authority was not
22 raised; and when his supervisor was critical of his work files.
23 Allstate avers that the foregoing do not rise to the level of
24 "adverse employment action" as that term is judicially construed.
25    The proper standard for defining an "adverse employment
26 action" under California law is the materiality test.  *Yanowitz*
27 *v. L'Oreal USA, Inc.,* 36 Cal. 4th 1028, 1036 (2005).
28 ///

9

1  This standard requires that an employer's adverse action
2  "materially affect the terms and conditions of employment."  *Id.*
3  When discussing this standard, the California Supreme Court
4  explained that FEHA protects an employee against unlawful
5  discrimination with respect not only to ultimate employment
6  actions such as termination or demotion, but also to the entire
7  spectrum of employment actions that are reasonably likely to
8  materially affect an employee's job performance or opportunity
9  for advancement in his or her career.  *See id.* at 1053-1054 (fns.
10 omitted).  The court went on to clarify that "[a]lthough a mere
11 offensive utterance or even a pattern of social slights by either
12 the employer or co-employees cannot properly be viewed as
13 materially affecting the terms, conditions, or privileges of
14 employment for purposes of Gov't Code section 12940(a), the
15 phrase 'terms, conditions, or privileges' of employment must be
16 interpreted liberally and with a reasonable appreciation of the
17 realities of the workplace... ."  *Id.* at 1054; *see also Taylor v.*
18 *City of L.A. Dept. of Water & Power*, 144 Cal. App. 4th 1216
19 (2006).  Further, when considering whether an employee has been
20 subjected to adverse employment action, the Court must consider
21 the "totality of the circumstances" rather than each discreet act
22 in isolation.  *See Yanowitz*, 36 Cal. 4th at p. 1036.

23     Allstate claims the August, 2004, performance rating cannot
24 be considered adverse employment action because it was not
25 material in that it did not result in any change in the terms of
26 Plaintiff's employment and it was based on Plaintiff's admittedly
27 poor performance.
28 ///

10

In addition, Allstate points to the fact that this performance rating was essentially identical to those received by Plaintiff prior to his heart surgery minimizing his argument that the rating was motivated by discriminatory animus.

Plaintiff does not rebut these arguments by Allstate and, in fact, the record supports Allstate's position.  Specifically, none of the foregoing amount to a material change in Plaintiff's employment.  The performance review did not result in any consequence in Plaintiff's employment.  He retained not only his position but also his pay rate.  Further, with respect to his settlement authority, Plaintiff concedes he was not singled out but rather that his settlement authority was lowered as part of an overall policy change in Allstate's structure.  Lastly, Plaintiff stated in deposition that Johnson-Jones' critical review of his files began long before he became disabled when she discovered an unacceptable level of errors in Plaintiff's work. Even considering the totality of the circumstances, the foregoing did not result in material changes in Plaintiff's conditions of employment.  In fact, there is no evidence in the present record of any change in the terms of his employment whatsoever.  There was no loss of pay, privileges or position.  Instead, the record shows Plaintiff received two pay raises during the period in question.  The Court finds no evidence of adverse employment action with respect to the foregoing acts.

///

///

///

///

1        **ii.  Qualified Individual with A Disability**

2

3        Allstate contends Plaintiff was not a qualified individual

4   with a disability when he sought reinstatement in March, 2005.

5   Allstate points to Plaintiff's representations to Liberty Life

6   and the Social Security Administration ("SSA") that he was

7   totally disabled and, therefore, eligible for benefits.  Pursuant

8   to Section 423 of the Social Security Act (the "Act"), in order

9   to establish eligibility for benefits, the individual's

10  impairment must be "of such severity that [he] is not only unable

11  to do [his] previous work but cannot, considering [his] age,

12  education, and work experience, engage in any other kind of

13  substantial gainful work which exists in the national economy..."

14  42 U.S.C.S. § 423(d)(2)(A).

15       Here, Plaintiff represented to the SSA that he was

16  "disabled," as that term is defined in the foregoing statutory

17  provision, and thereby qualified for benefits.  The SSA agreed

18  with Plaintiff's representation and he was accorded Social

19  Security Disability Insurance ("SSDI") benefits.  Through the

20  present action, however, he now claims his employer's refusal to

21  reinstate him was discriminatory.  Plaintiff makes this

22  allegation despite his representation to the SSA and Liberty Life

23  that he was entirely unable to do his work or any other kind of

24  gainful work that exists in the national economy.  The Parties

25  vigorously dispute whether this inconsistency defeats Plaintiff's

26  FEHA claim.

27  ///

28  ///

12

1    The Supreme Court had occasion to speak to a very similar
2  issue in *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795
3  (1999).  There, the Court discussed the possibility of an SSDI
4  claim existing comfortably side by side with a discrimination
5  claim.  *Cleveland*, 526 U.S. at 803.  The Court first acknowledged
6  that, absent a sufficient explanation, the foregoing type of
7  inconsistency can be fatal to a Plaintiff's claim.  *Id.*  In
8  striking a balance between a plaintiff's claim of total
9  disability under the Act and a later claim he or she is a
10  qualified individual for purposes of disability discrimination
11  law, the Court held that a discrimination plaintiff cannot simply
12  ignore the apparent contradiction.  *Id.* at 806.  Rather, he must
13  proffer a sufficient explanation.  *Id.*  The Court further
14  explained that to defeat summary judgment, the explanation must
15  be "sufficient to warrant a reasonable juror's concluding that,
16  assuming the truth of, or the plaintiff's good faith belief in,
17  the earlier statement, the plaintiff could nonetheless perform
18  the essential functions of [his] job, with or without reasonable
19  accommodation."  *Id.* at 807 (internal quotations omitted).

20    Plaintiff's sole contention in explaining the apparent
21  dissension between his earlier claim to the SSA and his current
22  claim in this action is that he was forced to apply for SSDI
23  benefits given Allstate's steadfast refusal to reinstate him.
24  The Court fails to appreciate how this explanation satisfies the
25  Supreme Court's mandate that Plaintiff explain how he could
26  "nonetheless perform the essential functions of his job."
27  ///
28  ///

1   While Plaintiff's explanation clearly furnishes a *motive* for his

2   decision to seek SSDI benefits, it fails to create a triable

3   issue of fact as to his *capability* of performing the work.   In

4   reaching this conclusion today, the Court recognizes the

5   difficulty of Plaintiff's position that he either assert total

6   disability, as that word is defined under the Act, or suffer

7   extreme financial hardship.   Still, the Court cannot deny summary

8   judgment when Plaintiff has failed to create a material issue of

9   fact with respect to an element of his claim.

10      Given the foregoing, the Court concludes that Plaintiff's

11  discrimination claim under FEHA fails as a matter of law.   Thus,

12  Allstate's Motion for Summary Judgment on this claim is granted.

13

14  **2.   Retaliation**

15

16      Generally, in order to establish a prima facie case of

17  retaliation under FEHA, a plaintiff must show (1) he or she

18  engaged in a protected activity, (2) the employer subjected the

19  employee to an adverse employment action, and (3) a causal link

20  existed between the protected activity and the employer's action.

21  *Yanowitz*, 36 Cal. 4th at 1042 (internal citations and quotations

22  omitted).

23      Once an employee establishes a prima facie case, the

24  employer is required to offer a legitimate, non-retaliatory

25  reason for the adverse employment action.   *Id.*   (citing *Morgan v.*

26  *Regents of Univ. of Cal.,* 88 Cal. App. 4th 52, 68 (2000)).

27  ///

28  ///

14

1  If the employer produces a legitimate reason for the adverse

2  employment action, the presumption of retaliation is removed, and

3  the burden shifts back to the employee to prove intentional

4  retaliation. *Yanowitz*, 36 Cal. 4th at 1042 (internal citations

5  and quotations omitted).

6      Plaintiff alleges Allstate retaliated against him when his

7  supervisor, Johnson-Jones, showed animus in replying to his email

8  seeking assistance.  In addition, Plaintiff alleges Allstate's

9  refusal to return him to work in 2005 was further retaliation

10 based on his disability.  Allstate concedes the existence of

11 protected activity. *See* Def. Mem. of Pts., Docket # 27, p. 9.

12 However, the Parties dispute whether the email and the refusal to

13 return Plaintiff to work were adverse employment action.

14     The standard for what constitutes adverse employment action

15 under a FEHA retaliation claim parallels the standard under a

16 FEHA discrimination claim. *Yanowitz*, 36 Cal. 4th at 1053.

17 Specifically, the actions alleged as retaliatory by Plaintiff

18 must materially affect the terms, conditions, or privileges of

19 employment to be actionable. *Id.*  To determine materiality, the

20 Court must take into account the unique circumstances of the

21 affected employee as well as the workplace context of the claim.

22 *Id.*

23     Plaintiff first claims that the email from Johnson-Jones was

24 sufficiently adverse to materially alter his working conditions.

25 Allstate rebuts that one isolated email, whether laden with

26 boorish overtones or not, can scarcely be said to have materially

27 altered Plaintiff's employment.  The Court agrees.

28 ///

A single inarticulate email is not the type of offensive
utterance that can properly form the foundation for a retaliation
claim.  *See id.* at 1054.

Plaintiff's allegation that he was not reinstated in
retaliation for protected speech is, however, another matter.
If, as Plaintiff alleges, he was not permitted to return to work
because of his protected speech, a material change in the
conditions of employment clearly would have occurred.  If, in
fact, Plaintiff was released to return to work but Allstate
elected not to return him to work as a result of his protected
speech, there would be a profound alteration in Plaintiff's
employment.  That is true at least to the extent he was not
permitted to return to his occupation.  The Court finds there is
an issue of material fact with respect to this claim.
Accordingly, Allstate's Motion for Summary Judgment on this claim
is denied.

**3.    Harassment**

FEHA's harassment provision provides as follows: "[i]t shall
be an unlawful employment practice ... [f]or an employer, ... or
any other person, because of ... [a] medical condition, ... to
harass an employee."  Cal. Gov't Code § 12940(j)(1).  To prevail,
a Plaintiff must show the conduct at issue was "severe enough or
sufficiently pervasive to alter the conditions of employment and
create a work environment that qualifies as hostile or abusive to
employees because of their [disability]."  *Miller v. Dept. of
Corr.,* 36 Cal. 4th 446, 462 (2005).

16

As is the case with discrimination under FEHA, the working
environment must be evaluated in light of all the circumstances.
*Id.*  These circumstances may include the frequency of the
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance.  *Id.*

In determining what constitutes "sufficiently pervasive"
harassment, courts have held that acts of harassment cannot be
occasional, isolated, sporadic, or trivial, rather the plaintiff
must show a concerted pattern of harassment of a repeated,
routine or a generalized nature.  *Roby v. McKesson Corp.*, 2006
Cal. App. LEXIS 2052, *16 (2006) (citing *Fisher v. San Pedro
Peninsula Hosp.,* 214 Cal. App. 3d 590, 610 (1989)).  The
harassment must satisfy an objective and a subjective standard.
*Roby*, 2006 Cal. App. LEXIS at *16.  With respect to the objective
severity of harassment, Plaintiff must prove that Allstate's
conduct would have interfered with a reasonable employee's work
performance and would have seriously affected the psychological
well-being of a reasonable employee.  *Id.* (citing *Fisher*, 214
Cal. App. 3d at 609-610, fn. omitted).

Plaintiff alleges the following to support his claim of
disability harassment: 1) his August 2004, performance review
indicated a "needs improvement" rating; 2) his settlement
authority was not increased upon his return from medical leave;
3) his supervisor was unnecessarily critical of his work files;
and 4) Allstate refused to reinstate him after he was released to
return to work in March, 2005.
///

17

1  In addition, Plaintiff alleges Johnson-Jones implied Plaintiff

2  did not hear well and once joked about Plaintiff being unable to

3  locate his vehicle in a parking lot.

4      The California Supreme Court has explained that harassment

5  consists of conduct outside the scope of necessary job

6  performance, conduct presumably engaged in for personal

7  gratification, because of meanness or bigotry, or for other

8  personal motives. *See Reno v. Baird,* 18 Cal. 4th 640, 645

9  (1998). Harassment is not conduct of a type necessary for

10 management of the employer's business or performance of the

11 supervisory employee's job. *Id.* at 464. Indeed, the court went

12 on to conclude that commonly necessary personnel management

13 actions such as hiring and firing, job or project assignments,

14 office or work station assignments, promotion or demotion,

15 performance evaluations, and the like, do not come within the

16 meaning of harassment. *Id.* at 646-47.

17     Considering the foregoing instruction by the State's high

18 court, it is readily apparent that the conduct of which Plaintiff

19 complains is largely, if not completely, within the sphere of

20 business and management duties. Specifically, his performance

21 review, settlement authority and Johnson-Jones' examination of

22 his work cannot be used to support a claim of harassment. *Id.*

23     Excepting the foregoing protected activity, what remains is

24 general disrespect and a failure to show sympathy for Plaintiff.

25 At best, the two isolated comments made by Johnson-Jones

26 regarding Plaintiff's hearing and memory are trivial and fall far

27 short of the pervasive type of conduct the law is intended to

28 foreclose. *See Roby*, 2006 Cal. App. LEXIS 2052.

1  The Court finds Plaintiff's claims insufficient as a matter of
2  law to create liability for harassment.  Accordingly, Allstate's
3  Motion for Summary Judgment on this claim is granted.

4

5  **4.   Failure to Accommodate**

6

7       Under section 12940(m), it is an unlawful employment
8  practice "[f]or an employer ... to fail to engage in a timely,
9  good faith, interactive process with the employee or applicant to
10 determine effective reasonable accommodations, if any, in
11 response to a request for reasonable accommodation by an employee
12 or applicant with a known physical ... disability."  The statute
13 provides an independent basis for liability.  *Gelfo v. Lockheed
14 Martin Corp.*, 140 Cal. App. 4th 34, 61 (2006) (internal citations
15 omitted).  Indeed, an employer's duty to accommodate is
16 inextricably linked to its obligation to engage in a timely, good
17 faith discussion with an applicant or employee whom it knows is
18 disabled, and who has requested an accommodation, to determine
19 the extent of the individual's limitations, before an individual
20 may be deemed unable to work.  *Id.*[2]
21 ///
22 ///

23 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

24        [2]Unlike the ADA, FEHA does not require that reasonable
   accommodation for disability be made only where the person is "a
   qualified individual" able to perform the essential functions of
25 the job as defined in 42 U.S.C. section 12111, nor is there any
   requirement in Cal. Gov't Code section 12940(m) that the employee
26 have a right to assert the duty of reasonable accommodation only
   where some kind of adverse employment action is taken against the
27 employee.  *Bagatti*, 97 Cal. App. 4th at 361.  Consequently,
   Plaintiff's failure to establish his status as a qualified
28 individual with a disability is not fatal to this claim.

1    The Plaintiff has alleged that Allstate failed entirely in

2  its' statutory duty to engage him in a timely, good faith

3  discussion to determine the extent of his limitations before

4  deeming him unable to work.  The Court agrees.

5    Plaintiff has plainly put forth sufficient facts to create a

6  material issue regarding whether Allstate attempted to ascertain

7  the parameters of his disability before concluding that he could

8  not return to work in early 2005.  There are ample issues of

9  material fact showing that Plaintiff sought return to his

10 position but that Allstate did not entertain his requests and,

11 instead, placed him on long term disability without an effort to

12 engage him in a dialogue.  Consequently, Allstate's Motion for

13 Summary Judgment on this claim is denied.

14

15 **5.    Negligent Infliction of Emotional Distress**

16

17    Plaintiff alleges he is entitled to damages for the

18 negligent conduct of Allstate that resulted in his severe

19 emotional distress.  Allstate avers that its conduct was not

20 sufficiently "outrageous" as to make it actionable.  This claim

21 fails for several reasons.

22    As an initial matter, the California Supreme Court has

23 clarified there is no independent tort of "negligent infliction

24 of emotional distress."  *Potter v. Firestone Tire & Rubber Co.*, 6

25 Cal. 4th 965, 984 (1993); *see also Delfino v. Agilent Tech.,*

26 *Inc.*, 145 Cal. App. 4th 790, 796 (2006).  The tort is negligence.

27 *Potter*, 6 Cal. 4th at 984.

28 ///

In addition, there is no duty to avoid negligently causing emotional distress to another unless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object. *Id.* Recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by [breach of the independent duty]. *Id.* Even then, with rare exceptions, a breach of the duty must threaten physical injury, not simply damage to property or financial interests. *Id.*

Plaintiff's allegation that Allstate breached its duty by negligently and carelessly allowing the insensitive and unlawful discrimination against Plaintiff is untenable for the following reasons. First, even assuming the existence of a special relationship as between employer and employee, Plaintiff cannot show that this relationship gives rise to a duty. Specifically, there is no evidence that Plaintiff's emotional well being is, or should be, an object of concern vis-a-vis Allstate. Rather, the relationship between Plaintiff and Allstate has as its primary object the payment of wages in exchange for the performance of obligations. More importantly, recovery is not available to Plaintiff in this instance as the alleged breach of duty did not threaten physical injury to Plaintiff. Lastly, California courts have held that an employer's supervisory conduct is inherently "intentional." *Semore v. Pool*, 217 Cal.App.3d 1087, 1105 (1990) (quoting *Cole v. Fair Oaks Fire Prot. Dist.,* 43 Cal. 3d 148, 160 (1987). Such intentional conduct will not support a claim for negligent infliction of emotional distress. *Semore*, 217 Cal. App. 3d at 1105.

1  The Court finds that an employee should not be permitted to avoid
2  the stringent requirements of an intentional infliction of
3  emotional distress claim, including proof of "outrageous conduct"
4  that "'exceed[s] all bounds usually tolerated by a decent
5  society'" by contending that the employer's intentional
6  supervisory acts directed at the employee were negligent.  *See*
7  *Cole*, 43 Cal. 3d at 155, fn. 7.  Consequently, summary judgment
8  as to this claim is proper and, hereby, granted.

9

10  **6.    Punitive Damages**

11

12      In California, a plaintiff can recover punitive damages only
13  if he proffers, by clear and convincing evidence, that the
14  defendant "has been guilty of oppression, fraud, or malice."
15  Cal. Civ. Code § 3294(a).  In addition, punitive damages against
16  a corporate employer are only permitted if the employee is
17  sufficiently high in the corporation's decision making hierarchy
18  to be an "officer, director or managing agent."  Cal. Civ. Code,
19  § 3294(a), (b); *Gelfo*, 140 Cal. App. 4th at 63.  'Managing
20  agents' are employees who 'exercise[] substantial discretionary
21  authority over decisions that ultimately determine corporate
22  policy.'  *Id.*

23      Allstate contends Plaintiff may not seek punitive damages on
24  two grounds.  First, Allstate alleges there is no evidence in the
25  record of oppression or malice towards the Plaintiff.  Second,
26  Allstate avers neither Johnson-Jones nor Loritzen were officers,
27  directors or managing agents of Allstate.
28  ///

1        Whether Allstate's conduct was oppressive or malicious is
2   not an issue of law, but rather an issue of fact inappropriate
3   for disposition on a Motion for Summary Judgment.  Accordingly,
4   Allstate's Motion for Summary Judgment as to punitive damages is
5   denied.

6

7                            **CONCLUSION**

8

9        For the reasons outlined above, Allstate's Motion for
10  Summary Judgment is GRANTED as to Plaintiff's claims for
11  discrimination, harassment, and negligence.  Allstate's Motion
12  for Summary Judgment is DENIED as to Plaintiff's claims for
13  retaliation, failure to accommodate and punitive damages.
14       IT IS SO ORDERED.
15   Dated: February 12, 2007
16
17
18                          MORRISON C. ENGLAND, JR.
19                          UNITED STATES DISTRICT JUDGE
20
21
22
23
24
25
26
27
28